JOSEPHINE ANNA FREEMAN v. CITY OF MINNEAPOLIS
AND OTHERS.
HARRY FREEMAN v. SAME.[1]

January 26, 1945.

No. 33,875.

[1]Reported in 17 N. W. (2d) 364.

*E. Luther Melin,* for appellants.

*R. S. Wiggin,* City Attorney, and *John T. O'Donnell,* Assistant City Attorney, for respondent City of Minneapolis.

*Durham & Swanson,* for respondents Max Saliterman and Crystal Super Market.

JULIUS J. OLSON, JUSTICE.

Plaintiff Josephine Freeman was injured on April 16, 1943, when, as her attorney puts it, "one of her shoed feet caught in a hole in the sidewalk which threw her violently forward onto the walk." The accident happened in front of the Crystal Super Market located at 22 West Lake street in Minneapolis. Defendant Saliterman and certain associates owned the abutting building and there operated a grocery store and meat market. Mrs. Freeman brought this action to recover damages for her injuries, joining the city and the property owners as defendants. Her theory is that the city was negligent in its duty to keep the sidewalk in a reasonably safe condition for public use. As to the abutting property owners, she maintains that they had caused the dangerous condition of the sidewalk and for that reason are liable for her hurt.

The companion case is brought by Josephine's husband, Harry, who seeks consequential damages for loss of his wife's services and for expenses incurred to bring about her cure. When plaintiffs rested, the court granted defendants' separate motions for directed verdicts. From an order denying plaintiffs' motion for new trial, they appeal. Both cases were tried together below and are so submitted here.

As to the city, its principal and, we think, decisive point is that the notice of injury required to be served pursuant to the provisions of our statute contains no statement of the amount sought as compensation for Josephine's injuries, the notice simply stating that she is "herewith giving you notice of the defective sidewalk and * * * injuries as well as a claim for damages, the exact amount of which cannot now be stated." The question here is whether the court was right in directing a verdict for the city. Minn. St. 1941, § 465.09 (Mason St. 1927, § 1831). Important in this connection also is § 465.12 (§ 1833), which provides that §§ 465.09 to 465.12 "shall apply to cities and villages existing under a charter framed pursuant to the Constitution" (art. 4, § 36).

■ We have held in several cases that the legislative act in respect to the method and procedure of presenting claims against municipalities was "intended to establish a uniform rule which should apply to all municipalities, thus avoiding the confusion arising out of the many dissimilar provisions contained in their various charters." Johnson v. City of Duluth, 133 Minn. 405, 408, 158 N. W. 616, 617. Other cases upholding the stated rule are Nicol v. City of St. Paul, 80 Minn. 415, 83 N. W. 375, and Olson v. City of Virginia, 211 Minn. 64, 300 N. W. 42, 136 A. L. R. 1365. The Olson case is our latest on this phase. We there held (211 Minn. 66, 300 N. W. 43):

■ "The statute imposes a requirement as a condition precedent to bringing suit against a municipality by an injured party claiming damages for tortious injury that he first present a notice of claim in writing to the governing body of the city. Szroka v. N. W. Bell Tel. Co. 171 Minn. 57, 213 N. W. 557, 59 A. L. R. 404. A state-

ment in the notice of claim of the amount of compensation demanded is a mandatory requirement of the statute and therefore an essential part of such notice. *A notice of claim which fails to state the amount of compensation demanded is insufficient for the plain reason that the omission constitutes failure to comply with a mandatory statutory provision as to an essential matter.* Doyle v. City of Duluth, 74 Minn. 157, 76 N. W. 1029; Bausher v. City of St. Paul, 72 Minn. 539, 75 N. W. 745." (Italics supplied.)

■ Continuing, this court said in the Olson case:

"Plaintiff urges that adherence to the provisions of the statute results in hardship and injustice. It is not for the courts to pass upon the merits, wisdom, or justice of legislation. So long as the legislature does not transgress constitutional limits, matters concerning the hardship and injustice of legislation are for legislative and not judicial consideration. State ex rel. Timo v. Juvenile Court, 188 Minn. 125, 246 N. W. 544. There can be no doubt that the legislature acted within its constitutional powers in enacting the statute here involved.

*"The notice of claim was insufficient for failure to state the amount of compensation demanded."* (Italics supplied.)

That is exactly the situation in this case. As to the city, there must be affirmance.

■ The rights and duties of the owner of property abutting upon a street or sidewalk are firmly established by our decisions. They clearly hold that, since a municipality is clothed with power and control over its streets and sidewalks, its corresponding duty requires it to keep these in repair for travel, and its liability arises when injuries result by reason of its neglect to discharge that duty. In Noonan v. City of Stillwater, 33 Minn. 198, 199, 22 N. W. 444, 53 Am. R. 23, where the rights of an abutting property owner were thoroughly discussed and determined, the charter of Stillwater (contained in Sp. L. 1881, c. 92, subc. 8, § 13, p. 571) made it—

" 'the duty of all owners of land adjoining any street, lane, or alley in said city to construct, reconstruct, and maintain in good

repair such sidewalks along the side of the street, lane, or alley next to the lands of such owner, respectively, as may have been heretofore constructed, or as shall hereafter be constructed or directed by the city council to be built, and of such material and with, and upon such place and grade, as the city council may by ordinance or otherwise prescribe.' It also provides that such owners shall be liable for all damages, to whomsoever resulting, from their fault or evident neglect in not keeping any such sidewalk in good repair, and in safe, passable condition; and that no action shall be maintained against the city by any person injured through a defect in any sidewalk, unless the owner of the land along which such sidewalk is defective is joined as a defendant; and that, in case of judgment against the defendants, execution shall first issue against the defendant owning the land."

Plaintiff there was injured because of defects in a sidewalk abutting upon property owned by one Isaac Gray. He and the city were both joined in the action. Each defendant demurred to the complaint. The trial court overruled the city's demurrer but sustained that of Mr. Gray. We are interested in the reasons assigned by the court for affirming the lower court. Since the opinion is easily available, we shall not attempt to quote from it at length. Sufficient for our purpose are the following (33 Minn. 203, 22 N. W. 446) :

"The provision of this charter, imposing upon owners of lots a liability to third persons, can hardly be supposed to be for the purpose of putting such owners in the place of the municipal corporation in respect to its control over and care of public streets, its duty, governmental in its character, to the public in that behalf, and its liabilities consequent upon a default in that duty. The owners have no power to regulate the use by others of the sidewalks, nor do they determine where, when, or how sidewalks shall be laid."

And further (33 Minn. 205, 22 N. W. 447) :

"The liability provided in the charter is one which subjects the owner to a personal action, and, for the reasons we have stated, it

cannot be sustained. The duty to construct and maintain sidewalks, being in the nature of a tax, is one that is owing only to the city, just as the duty to pay taxes for local improvements imposed in any other way. It is not, and from its very nature cannot be, a duty owing to third persons."

Mr. Justice Berry concurred, because in his opinion the imposition of liability upon the property owner (33 Minn. 205-206, 22 N. W. 448) "would be an attempt to shift upon the property-owner—a private person—a liability for the failure of the public authorities to perform a governmental duty." Mr. Justice Mitchell reached the same result, saying (33 Minn. 206, 22 N. W. 448):

"* * * Ordinances requiring a person to build or keep in repair sidewalks abutting his property are an exercise of the *taxing,* and not of the *police,* power. Hence the duty imposed by them is one due the city as a municipal body, and not to the public as composed of individuals."

He concluded (33 Minn. 207, 22 N. W. 448):

"The distinction between this case and one where a person has committed a nuisance in a street, or where he has failed to comply with the requirements of an ordinance enacted in the exercise of the *police* power, designed for the safety of the public, and imposing a duty due, not to the city as a municipal body, but to the public as individuals, is too apparent to require more than a reference to it."

In 26 Minn. L. Rev. under the title "Governmental Responsibility for Torts in Minnesota," the author carefully and ably reviews our cases. See especially his citations and discussion commencing at p. 485, under the subheading "Streets and Sidewalks." Further citations and discussion are found under the same heading at p. 854, *et seq.*

From what has been said we think it is obvious that the abutting owner upon a public street or sidewalk is not liable for any defect therein unless by him or his servants or representatives

created. Thus, in O'Hara v. Morris Fruit & Produce Co. 203 Minn. 541, 543, 282 N. W. 274, 275, this was our holding:

"* * * The city and not the owners or tenants of premises abutting public sidewalks is responsible for the latter's safe condition for travel. It cannot shift this responsibility to the shoulders of others by ordinance." (Citing cases.)

In that case we held that the property owner (203 Minn. 543, 282 N. W. 276)—

"owed no duty to travelers to remove from the sidewalk in front of its place of business matters in the nature of obstructions to safe passage or a nuisance," since "the same were not placed there or created by it or its servants."

In that opinion we further said (203 Minn. 544, 282 N. W. 276):

"* * * Other jurisdictions hold as we do that the owner or tenant of premises abutting a public street with sidewalk owes no duty to travelers thereon to remove dangerous objects, obstructions, or nuisances from such sidewalk or street even with knowledge of the condition, unless he or his servants have caused or created the same." (Citing cases.)

Among the cases there cited is Catino v. Sorrentini, 288 Mass. 89, 92, 192 N. E. 489, 490, where the court held:

"* * * He [the abutting property owner] is liable only if he or his agents or his land or the structures maintained by him thereon and within his control create a dangerous or defective condition upon the sidewalk."

Also cited therein is Fadem v. City of St. Louis (Mo. App.) 99 S. W. (2d) 511, 514, where the holding was that the abutting property owners could—

"be held liable to plaintiff in this action only upon proof that the condition which brought about her injuries had been caused or created by their own affirmative act."

As to Saliterman and the Crystal Super Market, the controlling question is whether the evidence for Josephine presented a jury issue. We have examined the record with care and fail to find any proof that the dangerous condition of the sidewalk, if such there was, had been caused or created by them. There is no testimony which connects them with its condition. There is evidence that the condition of the sidewalk was "very poor" some eight months prior to the time defendants entered into possession of the premises. That the sidewalk was "in very bad condition" is the testimony of Mrs. Prout, a friend who was with Mrs. Freeman at the time the accident happened, but there is nothing beyond counsel's assertions that these defendants contributed to that condition.

There are other assignments of error, but we are not persuaded that any of them require discussion.

Order affirmed.

[1]Reported in 17 N. W. (2d) 367.