*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0946**

Frankie R. Christy,
Appellant,

vs.

Rottinghaus Company, Inc.,
d/b/a Subway, Rottinghaus Real Estate, LLC, et al.,
Respondents.

**Filed December 27, 2016
Affirmed
Kirk, Judge**

Mower County District Court
File No. 50-CV-15-1034

Brandon V. Lawhead, Lawhead Law Offices, Austin, Minnesota (for appellant)

Raymond L. Tahnk-Johnson, Law Offices of Steven G. Piland, Overland Park, Kansas (for respondents)

Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

## U N P U B L I S H E D   O P I N I O N

**KIRK**, Judge

Appellant challenges the district court's order granting respondents' motion for summary judgment and dismissing her personal injury claim with prejudice. We affirm.

## FACTS

Respondents Rottinghaus Company, Inc., d/b/a Subway and Rottinghaus Real Estate, LLC, et al. (Rottinghaus), own a Subway restaurant in Austin. On January 11, 2009, appellant Frankie R. Christy fell on a public sidewalk where it intersects with Subway's driveway, and she sustained injuries. Christy sued Rottinghaus in January 2015, alleging that Rottinghaus's negligence caused her injuries.

In a September deposition, Christy described the weather on January 11, 2009, as very cold with a wind chill of 32 degrees below zero and no precipitation. It had not snowed in the past two days, but it had rained two days earlier. Christy slipped and fell at about 12:30 p.m. while walking across the Subway driveway where it intersects with the public sidewalk. Subway was open when Christy fell, but she did not remember if there were any cars in the parking lot.

During her deposition, Christy viewed three photographs of the driveway taken the morning of January 12, 2009. Christy marked the area where she fell on two of the photographs, and she explained that they did not accurately reflect the downward slope of the driveway toward the street. Christy did not describe any other discrepancies between the photographs and the condition of the driveway when she fell. After Christy fell, she was concerned about traffic in the street because she slid toward the street, but, at the time, there were no vehicles attempting to enter the Subway parking lot. The photographs do not depict an unusual accumulation of snow or ice, or chunks or clumps of snow or ice with grease.

Christy noticed that when she fell, the Subway parking lot was pretty clear of ice and snow, but she did not notice any sand or chemicals on the ice on the sidewalk. Christy acknowledged that the ice and snow on the sidewalk had not been pushed there before she fell, and she did not claim that Rottinghaus placed the ice in her path. Instead, Christy asserted that Rottinghaus failed to put sand or chemicals on the sidewalk, which caused her to slip and fall.

Christy did not report her fall to Subway or Rottinghaus until her lawsuit was served in 2015. Rottinghaus's human resources manager verified in an October 2015 deposition that Rottinghaus employed a snow-removal service during the winter of 2009 and that Subway employees were also expected to check and maintain the condition of the premises as needed.

On November 9, 2015, Rottinghaus moved for summary judgment. On February 1, 2016, Christy responded to the motion and included two nearly identical affidavits executed by herself and her daughter. In those affidavits, Christy and her daughter claimed that the cause of Christy's fall was "the accumulation of snow, ice, and chunks or clumps of snow/ice with grease that gathered from the motor vehicles as a result of the significant traffic from the high volume of cars and motor vehicles that cross over the sidewalk" at the location where she fell. They also asserted, without alleging specific conditions at the time of Christy's fall, that they had "noted the high volume of traffic at the spot [where she] fell (especially at lunch time) because cars turn in at this spot to get to . . . Subway."

On February 4, Christy also filed an affidavit executed by an accredited accident-reconstruction specialist stating that significant motor-vehicle traffic in cold weather can

3

create "black-ice," and that the specialist had previously seen this type of hazard, which endangers pedestrians on sidewalks when vehicles travel from a road to a business's driveway or parking lot. The specialist did not specifically discuss the Subway location in the affidavit.

Rottinghaus filed a reply to Christy's response, noting that the first time Christy alleged that there was grease or chunks of ice or snow in the driveway where she fell, or that there was a high volume of traffic, was in her February affidavit.

The district court granted Rottinghaus's motion for summary judgment, and dismissed Christy's claim with prejudice.[1] In its order, the district court also declined to rely on the information in the accident-reconstruction specialist's affidavit because it was overly speculative and did not support Christy's allegation of extraordinary use.

This appeal follows.

## DECISION

"On appeal from summary judgment, we must review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504-05 (Minn. 2011). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). "A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

---

[1] The district court's order and memorandum both state that "plaintiff's" motion for summary judgment was granted. The record reflects that this is a typographical error.

4

if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993); *see* Minn. R. Civ. P. 56.03.

No genuine issue of material fact for trial exists "when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id.* "[W]hen the nonmoving party bears the burden of proof on an element essential to the nonmoving party's case, the nonmoving party must make a showing sufficient to establish that essential element." *Id.*; *see also Schroeder v. St. Louis County*, 708 N.W.2d 497, 507 (Minn. 2006).

To recover on a negligence claim, a plaintiff must show: "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). "Summary judgment is appropriate when the record lacks proof of any of the four elements [of a negligence claim]." *Kellogg v. Finnegan*, 823 N.W.2d 454, 458 (Minn. App. 2012). "The existence of a duty of care is a threshold question because a defendant cannot breach a nonexistent duty." *Doe 169*, 845 N.W.2d at 177. Whether a duty exists is a legal question subject to de novo review. *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 581 (Minn. 2012).

5

"Generally speaking[,] the duty of keeping a sidewalk in reasonably safe condition for travel rests upon the city and not upon the abutting property owners or occupants." *Graalum v. Radisson Ramp, Inc.*, 245 Minn. 54, 59, 71 N.W.2d 904, 908 (1955). "[A]butting owners . . . are not liable to pedestrians for injuries caused by stumbling or slipping on sidewalks which have become slippery and dangerous from [n]atural (as distinguished from artificial) accumulations of ice and snow." *Id.* In order to become "liable for injuries proximately caused to a pedestrian who slips and falls on such ice," "an abutting owner [must] maintain[] or use[] his property in a manner whereby dangerous ice is caused to form on the adjacent sidewalk as a result of artificial . . . causes." *Id.* at 60, 71 N.W.2d at 908. An abutting property owner is not liable for injuries to pedestrians as a result of a "dangerous condition of the sidewalk result[ing] solely from the fact that travel over it ha[s] created dangerous holes and ridges in the snow and ice which had accumulated thereon from natural causes." *McDonough v. City of St. Paul*, 179 Minn. 553, 556, 230 N.W.2d 89, 90 (1930); *see also Sternitzke v. Donahue's Jewelers*, 249 Minn. 514, 520, 83 N.W.2d 96, 100 (1957); *Olson v. City of St. James*, 380 N.W.2d 555, 560 (Minn. App. 1986) ("The owner's liability does not extend to conditions formed by normal vehicular traffic.").

The fact that the affected portion of the sidewalk is crossed by a business's driveway that is used by customers does not change these principles of liability. *Graalum*, 245 Minn. at 60, 71 N.W.2d at 908. However, "where an abutting owner . . . makes an [e]xtraordinary use of a sidewalk for his own convenience, he owes a duty to the public to exercise due care in seeing that the affected portion of the sidewalk is maintained in a safe condition for

6

the passage of pedestrians." *Id.*; *Strong v. Richfield State Agency, Inc.*, 460 N.W.2d 106, 108-09 (Minn. App. 1990). An extraordinary use of a sidewalk adjacent to a driveway occurs "when, in the light of all the circumstances of the particular case, such use is not only for the personal convenience and benefit of the abutting occupant but is also of such a nature, in [k]ind or [d]egree, that a condition is created which interferes with, and is in derogation of, a normal use of the sidewalk by the public." *Graalum*, 245 Minn. at 60-61, 71 N.W.2d at 909; *Strong*, 460 N.W.2d at 108-09. This liability arises from the fact that the property owner "has, willfully or negligently, been instrumental in causing the hazardous condition." *Graalum*, 245 Minn. at 61, 71 N.W.2d at 909.

Extraordinary use may arise when an abutting owner alters the kind of use of a sidewalk by modifying its normal function, by, for example, installing a manhole or private cellarway. *Id.* Extraordinary use may also arise when "acts which, though intrinsically consistent with the usual function of a sidewalk or driveway when conducted in a normal manner and context, lose their customary status because they are performed in such unusual volume and under such conditions that they unduly interfere with a safe and normal use of the affected portion of the sidewalk." *Id.* "Vehicular travel . . . may periodically . . . become so heavy that a sidewalk ceases to perform its normal function as a reasonably safe route for pedestrian travel" and may become an extraordinary use due to its abnormal degree. *Id.*

Here, Rottinghaus owed no duty to pedestrians unless it had created or partially caused a dangerous condition. There is no argument that Rottinghaus is liable for Christy's injuries absent extraordinary use or creation of artificial conditions.

Christy argues that Rottinghaus negligently caused a hazardous condition on the city sidewalk abutting Subway by having its customers use a driveway that passed over the sidewalk, suggesting that using such a driveway for commercial purposes automatically qualifies as an extraordinary use. This is not the case in Minnesota. *Graalum*, 245 Minn. at 60, 71 N.W.2d at 908. Christy also argues that this case is like *Graalum*, where a very high volume of traffic, along with frequent stopping and starting of vehicles, over and on a city sidewalk created an extraordinary use.

In *Graalum*, a significant amount of traffic passed in and out of a parking ramp, frequently blocking pedestrians, and the plaintiff fell while being directed around a vehicle blocking the sidewalk. *Id.* at 56, 71 N.W.2d at 906. The high volume of vehicle traffic resulted in the frequent use of the sidewalk as a temporary parking place, and the sudden stopping of vehicles on the sidewalk caused large quantities of snow to be artificially deposited by the vehicles. *Id.* at 62, 71 N.W.2d at 910. This was determined to be an extraordinary use in both kind and degree, which imposed a duty of care upon the abutting property owner. *Id.* at 61, 71 N.W.2d at 909. Here, despite the lack of evidence in the record to support the conclusion that a high volume of traffic existed at the location where Christy fell, or that snow was artificially deposited by vehicles, Christy asserts that the district court erred when it granted summary judgment because there is an issue of material fact regarding whether there was extraordinary use of the sidewalk.

We conclude that there was no error in the district court's determination that normal travel by motor vehicles does not create an extraordinary use. Without evidence of

8

extraordinary use, there was no error in granting Rottinghaus's motion for summary judgment.

The district court also properly disregarded the evidence contained in the accident-reconstruction specialist's affidavit as overly speculative. Moreover, the speculation and sweeping conclusions in the affidavits are not sufficient to establish a duty of care. *See Johnson v. Lorraine Park Apts., Inc.*, 268 Minn. 273, 279, 128 N.W.2d 758, 762 (1964) ("[F]acts may be established by circumstantial evidence but where there is no evidence, direct or circumstantial, to support an inference any conclusion based thereon becomes merely conjecture."); *see also Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."); *Banbury v. Omnitrition Int'l Inc.*, 533 N.W.2d 876, 881 (Minn. App. 1995) ("A self-serving affidavit that contradicts earlier damaging deposition testimony is not sufficient to create a genuine issue of material fact.").

Because Christy failed to demonstrate extraordinary use of the driveway, she failed to demonstrate that Rottinghaus owed her a duty. Therefore, the general no-duty rule applies. Because the circumstances of this case do not impose a duty on Rottinghaus, the district court properly concluded that Christy's negligence action was devoid of an essential element, and that Rottinghaus could not have breached a duty it did not owe. *Doe 169*, 845 N.W.2d at 177. We conclude that the district court did not err when it granted

9

Rottinghaus's motion for summary judgment and dismissed Christy's personal-injury claim with prejudice.

**Affirmed.**